GERARD CONSTRUCTION,
INC., Plaintiff,

v.

MOTOR VESSEL VIRGINIA, her engines, boilers, etc.; Phillip N. Mosesso, Individually; Donald A. Fix, Individually; and Phillip N. Mosesso and Donald A. Fix d/b/a Sleps River Towing Co., Defendants.

Civ. A. No. 79–1172.

United States District Court,
W. D. Pennsylvania.

June 5, 1980.

John W. Murtagh, Jr., Greenfield & Murtagh, Pittsburgh, Pa., for defendants.

Dennis A. Watson, Grogan, Griffam, McGinley & Solomon, Pittsburgh, Pa., for plaintiff.

## OPINION

DUMBAULD, Senior District Judge.

Plaintiff's motion for summary judgment and to dismiss counterclaim had been argued before the lamentable death of our esteemed colleague Judge Snyder, and was reargued on June 3, 1980. Counsel for both sides conceded that in its present posture the case is within the diversity jurisdiction of this Court,[1] and that sale of the vessel involved is to be treated as sale of a chattel under the Uniform Commercial Code.[2]

The background of the case is succinctly stated in Judge Snyder's opinion of October 15, 1979:

> The M/V Virginia, a 1940 diesel-powered tow boat, was acquired by Gerard Construction, a marine contractor, in May 1978 as partial payment for monies due on the construction of a coal loading dock. Having little use for the vessel in its construction work, Gerard entered into negotiations with Phillip Mosesso and Donald Fix on January 5, 1979. The parties initially contemplated a lease-sale arrangement but, on January 16, 1979, they executed a "Bill of Sale." The purchase price was $67,500, with a $12,000 cash payment to be made on the date of sale and a promissory note of $55,500 due March 2, 1979. A separate promissory note was delivered, but neither a security agreement nor a mortgage agreement was executed.

The Bill of Sale, dated January 16, 1979, and the promissory note of even date, appear as exhibits to the amended complaint.

---

1. Plaintiff is an Indiana corporation, defendant a Pennsylvania partnership, and plaintiff's action is to recover $55,500 on a promissory note.

2. Judge Snyder in an opinion of October 15, 1979, had held that under the "prevailing rule" such a sale was not a maritime contract subject to admiralty jurisdiction.

Paragraph 2 contains the language that "Seller warrants title to be good and marketable and free of all debts, liens and encumbrances."[3]

Paragraph 5 reads: "Seller states that it is its belief that the vessel is now operative and in a safe condition and is not in violation of any federal regulation."[4]

Paragraph 6 states *inter alia* that "If Purchaser cannot honor the note . . . *and* if it is necessary for Seller to initiate any legal action . . . to collect the note, the purchaser will be responsible for any costs and expenses, including attorneys' fees, incurred by the Seller in the collection of said note." [Italics supplied]

Other undisputed facts appearing from the depositions and other papers in the record before us are that the $55,500 note has not been paid; that defendant Mosesso examined the vessel on January 5, 1979, and again in company with defendants' mechanic on January 12, 1979, which examination included a test run pushing a barge; that defendant's president advised Mosesso that the fire extinguisher on the vessel needed updating, but no other conversations concerning safety or operability of the vessel were held with plaintiff; that because of desire to use the vessel immediately in defendants' business they did not conduct further tests in drydock or with ultrasound equipment; that defendants did take possession of the vessel, brought it from Kentucky to Pittsburgh, and used it in their business, and registered it in their name with the Coast Guard.

Under these circumstances, what are the respective legal rights of the parties as a matter of law upon a fair interpretation of the language in the bill of sale?

The crucial issue is the proper interpretation of paragraph 5 of the bill of sale. Does it constitute a warranty? Were defendants justified in attempting by their letter of February 28, 1979, to rescind the transaction?

■ It seems plain that the language of paragraph 5 does not constitute a warranty. The wording is clearly drafted in pursuance of 12A P.S. 2–313(2) that "a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

Moreover, from paragraph 2 it clearly appears that when the parties wished to embody a warranty in their contract they knew how to do so.

Therefore all of defendants' alleged defenses, ultimately resting upon the assumption that paragraph 5 embodies a warranty, collapse, whether worded as asserting breach of warranty, condition precedent, fraudulent representation, estoppel, or failure of consideration.[5]

Consequently we likewise conclude that the buyer could not justifiably revoke acceptance and cancel the contract [see sections 2–608(1)(b) and 2–711(1)]. Hence defendants can not justify their continued use of the vessel in their business as a measure of conservation to preserve the value of the asset involved [see section 2–711(3)]. Defendants engaged in a long course of action evincing exercise of dominion over the vessel pursuant to the bill of sale. This consti-

---

**3.** Although breach of this warranty is set up in defendants' fifth defense, it is no longer pressed by defendants.

**4.** Defendants allege that this statement is a warranty and condition precedent to a valid agreement of sale, as well as constituting fraudulent representation, estoppel, and failure of consideration. As a counterclaim defendants allege damages sustained by loss of down payment, penalties to be imposed by the Coast Guard, loss of a contract with Ashland Petroleum Co. for transportation of oil, cost of replacement service, injury to reputation for reliability, and other harm.

**5.** Nor does section 2–314 (implied warranty of merchantability) benefit defendants. Besides the fact that plaintiff is not "a merchant with respect to goods of that kind," the *Virginia* is a specific vessel (like a particular tract of land such as Blackacre) and not a generic type of goods known to the trade under a "contract description." Likewise section 2–315 is inapplicable. Defendants did not "rely on the seller's skill or judgment" but dealt at arm's length and made such examination of the vessel as they deemed expedient. See also section 2–316(3)(b).

tuted acceptance of the vessel as an "act inconsistent with the seller's ownership" [section 2–606(1)(c)].

Accordingly we conclude that there is no genuine issue as to any material fact and that plaintiff is entitled under Rule 56(c) FRCP to judgment as a matter of law.

Plaintiff is not entitled under Rule 56(c) FRCP to judgment as a matter of law for costs and attorney's fees.

█ Plaintiff is not entitled to costs and attorney's fees under the wording of paragraph 6 of the bill of sale. It does not appear that purchaser was not able to honor the note on the date due, merely that purchaser *did not* honor it, having before that date attempted to rescind the contract.